### State of Vermont v. William Ruud

[465 A.2d 1377]

No. 82-427

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 6, 1983

*Dena Monahan*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Blodgett & Watts*, Burlington, for Defendant-Appellant.

**Gibson, J.** This is an appeal from a judgment of the Chittenden Superior Court pursuant to V.R.C.P. 75 which affirmed an order of the Chittenden District Court. The district court found that defendant refused to take a breath test which had been requested on reasonable grounds. By thus violating 23 V.S.A. § 1205, defendant became subject to the civil penalties provided for by the statute. See *State* v. *Mayo*, 137 Vt. 77, 398 A.2d 303 (1979). Defendant now renews the argument he urged on the superior court, that the record contains insufficient evidence to support a finding of a knowing refusal to submit to a breath test. We disagree and affirm.

In the early morning hours of March 11, 1982, a Burlington police officer observed defendant driving south on Shelburne

Road. Six or seven times defendant weaved across the two southbound lanes and into the northbound lanes. The officer stopped the vehicle and requested the driver's license and registration. Defendant fumbled through his wallet, twice passing over the license before he produced it. The officer detected the odor of alcohol on defendant's breath and noted that his eyes were watery and bloodshot, that his speech was slurred, and that he leaned against his car for support during the brief roadside questioning. The officer took defendant to the police station for further processing and explained his rights to him. Defendant twice refused to take a breath test, despite being told of the adverse administrative consequences of such a decision. 23 V.S.A. § 1205. See also *State* v. *Baldwin*, 140 Vt. 501, 513, 438 A.2d 1135, 1141 (1981). The refusal hearing and subsequent appeals followed.

23 V.S.A. § 1205 (a) requires that the court find "that the officer had reasonable grounds to believe that the defendant was . . . operating, attempting to operate, or in actual physical control of a motor vehicle on a highway" while under the influence of intoxicating liquor before it forwards a report of the hearing to the Commissioner of Motor Vehicles. The reasonableness of the officer's belief is apparent from the record now before this Court. Defendant's attempts during the reasonableness hearing to get the officer to agree that in small towns it is quite common for people to weave across the center of the highway, or that Shelburne Road was so badly heaved and rutted that it caused the car to swing back and forth across several lanes, were not supported in the evidence. Equally unavailing is defendant's argument that the effective anti-litter laws in Vermont tangentially caused his car to "get a week or a month's accumulation of soda bottles," the smell of which the officer mistook for alcohol on defendant's breath. Given credible testimony by the officer that he was certain the odor of alcohol came from defendant's breath, the fact finder was clearly entitled to find that adequate basis existed for a reasonable belief that defendant was under the influence. *McGarry* v. *Costello*, 128 Vt. 234, 238, 260 A.2d 402, 404–05 (1969). See also *State* v. *Rifkin*, 140 Vt. 472, 476, 438 A.2d 1122, 1124 (1981).

■ Defendant also challenges the sufficiency of the State's scanty identification at trial of defendant as the operator of the vehicle. In fact, during its case-in-chief, the State never asked the investigating officer if the defendant was the operator of the vehicle. While this Court has no doubt that the omission of a clear identification was pure oversight, it nonetheless is a vital and indispensable element of a violation of § 1205.

■ However, our review of the record in this case does not end with the culmination of the State's case-in-chief. Defendant's cross-examination of the officer supports the superior court finding that the identification of defendant as the operator was "established . . . without a doubt." If further verification of the operator's identity was necessary, it was supplied by the State on redirect examination.

Finally, defendant questions for the first time on appeal the adequacy of the rights he was advised of when the breath test was requested. The following colloquy took place between the deputy state's attorney and the police officer at the reasonableness hearing:

> Question: When you got back to the station, did you read him the forms?
>
> Answer: I read the DWI procedure to him, and advised him of his rights, and he followed the procedure and refused to take the tests.
>
> Question: And after he refused, did you tell him what basically would happen in terms of administrative penalties?
>
> Answer: I did the second form. I also informed him he was subject to losing his license for up to a year, for a year, three, and six years depending on the number of DWI convictions he had.
>
> Question: And did he again—
>
> Answer: Refuse? Yes, he did.

No other explanation was given concerning the procedures that were followed while defendant was being processed, and no issue was raised below that the procedures followed were

insufficient in any way. Defendant now argues that there is no evidence that he was advised of his right to consult with counsel and that a bare statement by the officer that he "read the DWI procedure to [defendant] and advised him of his rights" provides no evidence that defendant's rights were in fact observed.

The evidence is indeed sparse, but we cannot say it is nonexistent. The State has presented a showing that it complied with the required procedures, and had defendant wanted to challenge those procedures, he should have done so in the first instance below. Absent extraordinary circumstances, matters raised for the first time on appeal will not be considered. *State* v. *Welch*, 136 Vt. 442, 444, 394 A.2d 1115, 1116 (1978). See also *State* v. *Durling*, 140 Vt. 491, 496–98, 442 A.2d 455, 457–58 (1982).

Although we find no error in the record now before us, we hasten to point out that, in order to lay to rest any doubts concerning the protection of the rights of a defendant, the better practice in cases such as this is to spell out in detail the step-by-step processing procedures that were followed.

*Affirmed.*